Slip Op. 22-49

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **CANADIAN SOLAR INC.,** *ET AL.,* | |
| Plaintiffs, | |
| **CHANGZHOU TRINA SOLAR ENERGY CO., LTD.** *ET AL.,* | |
| Consolidated Plaintiffs, | **Before: Jane A. Restani, Judge** |
| **JINKO SOLAR CO., LTD.** *ET AL.,* | **Consol. Court No. 19-00178** |
| Intervenor Plaintiffs, | |
| v. | |
| **UNITED STATES,** | |
| Defendant. | |

## OPINION

Dated: May 19, 2022

[Commerce's Remand Results in the Fifth Administrative Review of Commerce's Countervailing Duty Order on crystalline silicon photovoltaic cells from the People's Republic of China are sustained.]

Bryan P. Cenko and Sarah Wyss, Mowry & Grimson, PLLC, of Washington D.C., for Plaintiffs. With them on the brief was Jeffrey S. Grimson.

Robert G. Gosselink, Jonathan M. Freed, and Kenneth N. Hammer, Trade Pacific, PLLC, of Washington, D.C., for Consolidated Plaintiffs.

Jordan C. Kahn, Grunfeld Desiderio Lebowitz Silverman & Klestadt, LLP, of Washington, D.C., for Intervenor Plaintiffs Jinko Solar Co., Ltd., Jinko Solar Import & Export Co., Ltd., Zhejang Jinko Solar Co., Ltd. With him on the brief were Andrew T. Schutz and Kavita Mohan.

Richard L.A. Weiner, Rajib Pal, Shawn M. Higgins, and Justin R. Becker, Sidley Austin, LLP, of Washington, D.C., for Intervenor Plaintiffs Yingli Green Energy Holding Co., Ltd.,

Baoding Tianwei Yingli New Energy Resources Co., Ltd., Tianjin Yingli New Energy Resources Co., Ltd., Hengshui Yingli New Energy Resources Co., Ltd., Lixian Yingli New Energy Resources Co., Ltd., Baoding Jiasheng Photovoltaic Technology Co., Ltd., Beijing Tianneng Yingli New Energy Resources Co., Ltd., Hainan Yingli New Energy Resources Co., Ltd., Shenzhen Yingli New Energy Resources Co., Ltd., Yingli Green Energy International Trading Co., Ltd., Yingli Green Energy Americas, Inc., Yingli Energy (China) Co., Ltd.

Craig A. Lewis, Hogan Lovells U.S. LLP, of Washington D.C., for Intervenor Plaintiff Shanghai BYD Co., Ltd.

Justin R. Miller, International Trade Field Office, U.S. Department of Justice, of New York, NY, for the Defendant. With him on the brief was Tara K. Hogan, Assistant Director. Of counsel on the brief was Paul K. Keith, Office of Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington, D.C.

Restani, Judge: This action concerns the remand redetermination made by the United States Department of Commerce ("Commerce") in the Fifth Administrative Review of the countervailing duty order on crystalline silicon photovoltaic cells, whether or not assembled into modules, from the People's Republic of China ("PRC"), covering the period from January 1, 2016 to December 31, 2016.  See Final Results of Redetermination Pursuant to Court Order, ECF No. 130 (Dec. 13, 2021) ("Remand Results").

Plaintiffs Canadian Solar Inc., Canadian Solar International, Ltd., Canadian Solar Manufacturing (Luoyang) Inc., Canadian Solar Manufacturing (Changshu) Inc., Canadian Solar (USA) Inc., CSI Cells Co., Ltd., CSI Solar Power (China) Inc., CSI Solar Power Group Co. Ltd., CSI Solartronics (Changshu) Co., Ltd., CSI Solar Technologies Inc., CSI New Energy Holding Co., Ltd., CSI-GCL Solar Manufacturing (YanCheng) Co., Ltd., Changshu Tegu New Materials Technology Co., Ltd., Changshu Tlian Co., Ltd., Suzhou Sanysolar Materials Technology Co., Ltd. (collectively, "Canadian Solar"), Intervenor Plaintiffs Jinko Solar Co., Ltd., Jinko Solar Import & Export Co., Ltd., Zhejang Jinko Solar Co., Ltd. (collectively, "Jinko"), and Intervenor

Plaintiff Shanghai BYD Co., Ltd. (together, "Plaintiffs") challenge part of Commerce's Remand Results as unsupported by substantial evidence or otherwise not in accordance with law.  See Objections to Remand Results of Plaintiffs Canadian Solar, ECF No. 132 (Jan. 12, 2022) ("Canadian Solar Br."); Plaintiff-Intervenor Shanghai BYD Co.'s Objections to Remand Results, ECF No. 134 (Jan. 12, 2022) ("Shanghai BYD Br."); Jinko Comments on Remand, ECF No. 131 (Jan. 12, 2022) ("Jinko Br.")

## BACKGROUND

The court presumes familiarity with the facts of this case and recounts them only as necessary.  Commerce published its final determination in the Fifth Administrative Review of the countervailing duty order on crystalline silicon photovoltaic cells, whether or not assembled into modules from the PRC on August 28, 2019.  See Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From the People's Republic of China: Final Results of Countervailing Duty Administrative Review and Recession of Review in Part; 2016, 84 Fed. Reg. 45,125 (Dep't Commerce Aug. 28, 2019) ("Final Results"), as amended by Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From the People's Republic of China: Amended Final Results of Countervailing Duty Administrative Review; 2016, 84 Fed. Reg. 68,102 (Dep't Commerce Dec. 13, 2019) ("Amended Final Results"); see also Decision Memorandum for Final Results of Countervailing Duty Administrative Review: Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, from the People's Republic of China, C-570-980, POR: 01/01/2016-12/31/2016 (Dep't Commerce Aug. 19, 2019) ("I&D Memo").

Consol. Court No. 19-00178                                                    Page 4

In <u>Canadian Solar, Inc. v. United States</u>, the court sustained in part and remanded in part aspects of the Amended Final Results.  46 CIT __, 537 F. Supp. 3d 1380 (2021) ("<u>Canadian Solar</u>"). The court granted Commerce's request for remand on three issues: 1) Commerce's calculation of the benchmark for aluminum extrusions, 2) Commerce's determination of the benchmark for solar grade polysilicon, and 3) Commerce's use of adverse facts available ("AFA") in its specificity finding for the provision of electricity for less than adequate renumeration ("LTAR").  <u>Id.</u> at 1386–87.  The court noted that the administrative records of the Third, Fourth, and Fifth Administrative Reviews and the Government's legal rationales are similar and instructed Commerce to consult prior opinions in these reviews in reevaluating its decisions.  <u>Id.</u>  The court also remanded for Commerce to reconsider its determination not to grant an entered value adjustment ("EVA") and its determination regarding the Export Buyer's Credit Program ("EBCP").  <u>Id.</u> at 1399, 1403.

## JURISDICTION & STANDARD OF REVIEW

The court has jurisdiction pursuant to 28 U.S.C. § 1581(c) (2021) and 19 U.S.C. § 1516a(a)(2)(B)(iii) (2021).  The court will uphold Commerce's determination unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law[.]" <u>Id.</u> § 1516a(b)(1)(B)(i).  Remand redeterminations are "also reviewed for compliance with the court's remand order."  <u>Xingjiamei Furniture (Zhangzhou) Co., v. United States</u>, 38 CIT __, 968 F. Supp. 2d 1255, 1259 (2014) (internal citation omitted).

Consol. Court No. 19-00178                                                                 Page 5

## DISCUSSION

### I.      Electricity Subsidy

In its original determination, Commerce found that the provision of electricity was a

specific subsidy after applying AFA. I&D Memo at 50–53.  As with other issues, the

Government requested remand to reconsider its subsidy determination in the light of the Third

and Fourth Administrative reviews.  See Canadian Solar, 46 CIT at __, 537 F. Supp. 3d at 1386–

87.  On remand, Commerce found the provision of electricity for LTAR to be regionally specific

consistent with its remand redeterminations in the Third and Fourth Administrative Reviews.

See Remand Results at 20; Canadian Solar Inc., v. United States, 2020 WL 6129754 at *4 (2020)

("Canadian Solar II"), aff'd 23 F.4th 1372, 1378 (Fed. Cir. 2022) ("Canadian Solar CAFC");

Changzhou Trina Solar Energy Co. v. United States, 44 CIT __, 466 F. Supp. 3d 1287, 1299–

1300 (2020) ("Changzhou Trina III").  Canadian Solar challenges this finding, arguing that (1)

Commerce is required, per 19 U.S.C. § 1677(5A)(D)(iv), to identify a geographical region that

received subsidized electricity prices and failed to do so; (2) Commerce's reliance on AFA was

not supported by substantial evidence because no gap existed in the record; (3) Commerce's

benchmark construction demonstrated that it failed to designate a subsidized geographical

region; (4) Commerce should have designated a geographical region based on the information in

the record; and (5) Commerce's benchmark construction was arbitrary and capricious because it

"nonsensically treat[ed] a single factory as located in multiple locations."  See generally

Canadian Solar Br.; see also Jinko Br. at 3, Shanghai BYD Br. at 4–5. Commerce's electricity

subsidy remand redetermination is supported by substantial evidence and is sustained.

Canadian Solar argues that Commerce's reliance on AFA was not supported by

substantial evidence because no gap on the record existed to warrant the application of adverse

facts.  Canadian Solar Br. at 13–19.  Canadian Solar acknowledges that the court has previously

rejected this argument on "nearly identical facts" in the Third Administrative Review.  Canadian

Solar Br. at 19.  So too did this court and the Federal Circuit reject this argument in the Fourth

Administrative Review.  Canadian Solar CAFC, 23 F.4th at 1378 (explaining that "[t]his court

has specifically upheld the application of adverse facts available where 'the government of China

refused to provide information as to how the electricity process and costs varied among the

various provinces that supplied electricity to industries within their areas,' 'did not provide the

data sufficient to establish the benchmark price for electricity' and noting that there were

'comparable informational gaps in this case'") (internal citations omitted).

Commerce's analysis and the record here is largely the same as in prior reviews.  The

GOC claimed in this review that provincial pricing authorities, not the NDRC, set electricity

prices in the provinces in accordance with market principles since 2015.  See GOC Initial

Questionnaire Response, P.R. 73–76, at 68–69 (June 19, 2018) ("GOC IQR").  Commerce found

that the GOC failed to provide information necessary to verify this claim, refusing, for example,

to provide provincial price proposals that might demonstrate that the provinces are price-setting

authorities or that there are market or cost-based reasons underlying regional price variations.

Remand Results at 20–21; GOC IQR at 70.  Commerce found that the GOC did not comply to

the best of its ability to fill informational gaps on the record.  Remand Results at 20–21.  Without

the requested information, Commerce concluded that it could not "confirm that market and

commercial principles explain the variation in electricity prices" nor "determine the price-setting authority." Id. at 21.

Commerce determined that other record evidence, including NDRC Notice 2090 and NDRC Notice 748, demonstrated that the NDRC continued to set provincial electricity prices. Id. at 21–24; Memorandum Placing Information on the Record Regarding Electricity, Remand P.R. 1, at Attachment 1 (Sept. 24, 2021); GOC IQR at Ex. II E.22.  The court has repeatedly sustained Commerce's determination that Notice 748 demonstrates that the NDRC is involved in price-setting in some capacity.  See Jiangsu Zhongji Lamination Materials Co. v. United States, 43 CIT __, __, 405 F. Supp. 3d 1317, 1136-38 (2019); Canadian Solar II, 2020 WL 6129754 at *5.

Commerce is entitled to apply AFA where an interested party declines to provide relevant requested information and fails to cooperate with an investigation to the best of its ability.  See 19 U.S.C. § 1677e(b); Deacero S.A.P.I. de C.V. v. United States, 996 F.3d 1283, 1297 (Fed. Cir. 2021).  Because the GOC here refused to provide requested information necessary to support its assertion that the NDRC does not set provincial electricity prices, Commerce was entitled to apply AFA.  GOC Initial IQR Response at 68–70.  Commerce's use of AFA is thus supported by substantial evidence, as it was in the Third and Fourth Administrative Reviews.  Changzhou Trina III, 44 CIT at __, 466 F. Supp. 3d at 1303; Canadian Solar II, 2020 WL 6129754 at *4–5; Canadian Solar CAFC, 23 F.4th at 1380.

Canadian Solar further argues that Commerce failed to identify a geographic region that received subsidized electricity prices, in violation of its statutory obligations.  See Canadian Solar Br. at 5–12. The court rejected this argument in the Third and Fourth Administrative

Reviews and continues to find it unavailing here.  See Changzhou Trina III, 44 CIT at __, 466 F.

Supp. 3d at n.12 (noting that "no additional showing of specificity is required if Commerce finds

that a central government is providing subsidies based on region") (internal citation omitted); see

also Canadian Solar II, 2020 WL 6129754 at *5, aff'd 23 F.4th 1372.  The Federal Circuit has

also held that Commerce may find a countervailable regionally specific subsidy "where

documents support the inference that the central government of China was involved in provincial

electricity pricing that results in regional price variability."  Canadian Solar CAFC, 23 F. 4th at

1380.  As Commerce reasonably applied AFA to determine that the NDRC is the centralized

price-setting authority for electricity and reasonably found that the NDRC provided subsidies to

the region, Commerce was not required to identify a particular geographic region that received

an electricity subsidy.

        Canadian Solar next argues that Commerce's benchmark construction fails to designate a

subsidized geographical region.  Canadian Solar Br. at 19–25.  Canadian Solar posits that

Commerce's AFA construction "essentially determined that all areas in China received

subsidized electricity rates," which undercuts Commerce's position that the program is

regionally specific.  Id. at 19.  Here, as in the Fourth Administrative Review, Commerce

compared each of Canadian Solar's electricity rates to the highest provincial rate for the relevant

category.  Remand Results at 24 (noting "[t]he amount of the subsidy we infer to be the

difference between what the respondent is paying, and the highest tariffs set for any province.");

Canadian Solar CAFC, 23 F.4th at 1381.  Here too, Commerce explained that this issue only

arises because the GOC declined to provide information that would have permitted Commerce to

identify an unsubsidized province or unsubsidized rates.  Remand Results at 47–48 (stating

"Commerce cannot identify which provinces are being subsidized by the GOC, due to the GOC's failure to provide Commerce with the requested information."); see also Canadian Solar CAFC, 23 F.4th at 1381.  Commerce's inference that the highest rate in each category was unsubsidized was reasonable, and Plaintiff's argument that this benchmark renders all regions subsidized fails as "Commerce's rate calculation does not undermine the separate conclusion that the electricity subsidies are geographically specific because the rates depend on the province in which an enterprise is located." Canadian Solar CAFC, 23 F.4th at 1381.

Canadian Solar next argues that even if Commerce were to infer some adverse facts, Commerce could have selected a subsidized geographical region based on information of record. See Canadian Solar Br. at 25–29.  Where, as here, the GOC's non-compliance prevented Commerce from identifying which regions are subsidized, and Commerce appropriately used AFA to establish that prices vary by region, Commerce need not designate the geographical region being subsidized.  See Canadian Solar II, 2020 WL 6129754 at *4–5; Canadian Solar CAFC, 23 F.4th at 1378–81.  Plaintiff's contention that Commerce arbitrarily used benchmarks from multiple provinces to measure the subsidy benefit received by one factory in one geographic location, and that the benchmark calculation is thus not in accordance with law, is similarly meritless.  See Canadian Solar Br. 29–31.  "Commerce's goal in setting a benchmark rate is to best approximate the market rate of electricity, not to choose the rate respondents were most likely to pay in an electricity market."  See Changzhou Trina Solar Energy Co. v. United States, 42 CIT __, 352 F. Supp. 3d 1316, 1343 (2018).  As the court has previously explained, "Commerce can apply an adverse inference to the GOC's electricity rate submissions and select the highest rates for each electrical category and use those to set a benchmark."  Id. (citing 19

U.S.C. § 1677e(b); 19 C.F.R. § 351.511(a)(2)(iii); <u>Fine Furniture (Shanghai) Ltd. v United

States</u>, 36 CIT 1206, 865 F. Supp. 2d 1254, 1260–62 (2012).  Overall, Commerce's benchmark

calculations were reasonable and supported by substantial evidence.  The court sustains

Commerce's remand redetermination regarding the countervailable subsidization of electricity in

China.

### II.        Benchmark for Aluminum Extrusions

In the Third and Fourth Administrative Reviews of this proceeding, Commerce initially used

an average of two data sets, IHS Technology ("IHS") and UN Comtrade ("Comtrade") to

establish the benchmark for aluminum extrusions for LTAR.  <u>See Canadian Solar II</u>, 2020 WL

6129754 at *4; <u>Changzhou Trina III</u>, 44 CIT at __, 466 F. Supp. 3d at 1293–94.  On remand in

these prior reviews, Commerce relied solely on the IHS data in computing the benchmark for

aluminum in compliance with the court's decision, which had expressed concern that the

Comtrade data included the prices of other products unrelated to solar frames.  <u>See Canadian

Solar II</u>, 2020 WL 6129754 at *4; <u>Changzhou Trina III</u>, 44 CIT at __, 466 F. Supp. 3d at 1294.

The court sustained the use of the IHS data alone.  <u>Canadian Solar II</u>, 2020 WL 6129754 at *4;

<u>Changzhou Trina III</u>, 44 CIT at __, 466 F. Supp. 3d at 1295.  Here, Commerce also initially used

the average of IHS and Comtrade data to establish the benchmark for aluminum extrusions, <u>see

I&D Memo</u> at 46, and the court remanded for Commerce to consider its benchmark

determination in the light of opinions from the Third and Fourth Administrative Reviews.  <u>See

Canadian Solar</u>, 46 CIT at __, 537 F. Supp. 3d at 1386–87.

On remand, Commerce relied solely on IHS data to establish a benchmark for aluminum

extrusions.  <u>Remand Results</u> at 7.  No parties object to this approach.  <u>See generally Canadian</u>

Solar Br.; Jinko Br. at 3; Shanghai BYD Br. at 3.  The use of IHS data alone is in accordance

with Commerce's regulatory obligations and addresses the court's prior concerns that the

Comtrade data included unrelated products.  See Canadian Solar II, 2020 WL 6129754 at *4.

The court holds, as it has in prior reviews, that the use of the IHS data as a benchmark for

aluminum extrusions is supported by substantial evidence and sustains Commerce's remand

redetermination on this issue.  See Changzhou Trina III, 44 CIT at __, 466 F. Supp. 3d at 1295;

Canadian Solar II, 2020 WL 6129754 at *4.

### III.    Polysilicon Benchmark

In the Third and Fourth Administrative Reviews of this proceeding, the court instructed

Commerce to sufficiently explain how the GOC's participation in the solar-grade polysilicon

industry led to the price-distortion of solar-grade polysilicon and rendered the data provided by

Canadian Solar as a tier one metric unreliable.  Changzhou Trina III, 44 CIT at __, 466 F. Supp.

3d at 1297; Canadian Solar II, 2020 WL 6129754 at *6.  The court remanded this issue to

Commerce in this review to consult these prior opinions and reevaluate its determinations

accordingly.  See Canadian Solar, 46 CIT at __, 537 F. Supp. 3d at 1386–87.

In previous remands, Commerce determined based on facts otherwise available that the

GOC's participation in the polysilicon market in addition to other factors created a distorted

polysilicon market in the China such that Canadian Solar's import data is unusable as a tier one

benchmark.  Changzhou Trina III, 44 CIT at __, 466 F. Supp. 3d at 1297–98; Canadian Solar II,

2020 WL 6129754 at *6.  Commerce made the same determination on remand here and

explained its reasoning in accordance with Canadian Solar and prior reviews.  Remand Results at

7–19.  Commerce first explained the significance of the record evidence on which it initially

relied to show that the Chinese market for solar-grade polysilicon was distorted.  See id. at 10–

11.  Commerce also supplemented the record and expanded its analysis to provide a "broader

analysis of the solar grade polysilicon market."  Remand Results at 8.  It explained on remand

that the supplemented record demonstrated that the PRC solar-grade polysilicon market is

distorted; for example, GCL-Poly's 2016 Annual Report, the largest Chinese solar-grade

polysilicon producer, indicates that polysilicon pricing remained stable in 2016 due to an "Import

Duty Levy" on foreign imports, "especially those from the United States." Id. at 14;

Memorandum Placing Information on the Record Regarding Polysilicon, Remand P.R. 2 (Sept.

28, 2021) at Attachment III, p.26.

       Canadian Solar does not object to Commerce's determination on remand.  See Canadian

Solar Br. at 1–2 (noting "Canadian Solar objects to Commerce's remand redetermination related

to the electricity program and does not object to Commerce's remand redetermination on the

remaining issues.").  Jinko and Shanghai BYD both state their opposition to Commerce's remand

redetermination regarding polysilicon, but neither develop arguments in support of this position

and rather state that they incorporate by reference arguments made by Canadian Solar on this

issue.  See Jinko Br. at 3; Shanghai BYD Br. at 3–4.  Such arguments do not exist in Canadian

Solar's briefing.  See generally Canadian Solar Br.  As Jinko and Shanghai BYD failed to

provide arguments to support their objections, the objections are waived.[1]  See United States v.

Great American Ins. Co., 738 F.3d 1320, 1328 (Fed. Cir. 2013) (noting "arguments that are not

appropriately developed in a party's briefing may be deemed waived.")

---

[1] If Jinko and Shanghai BYD intended to refer to comments made by Canadian Solar before the
agency, that is insufficient.

As the court has previously ruled on similar records, the new information provided by

Commerce on remand in addition to Commerce's more detailed explanation of various of their

initial submissions is sufficient to support Commerce's determination that GOC participation in

the polysilicon market creates market distortion.  See Canadian Solar II, 2020 WL 6129754 at

*6; Changzhou Trina III, 44 CIT at __, 466 F. Supp. 3d at 1299.  The remand redetermination

regarding polysilicon is supported by substantial evidence and accordingly sustained.

## IV.    Entered Value Adjustment

Commerce initially denied Canadian Solar's request for an EVA on its sales made

through an affiliated company, finding that Canadian Solar did not submit sufficient information

to meet the requirements for such an adjustment.  See IDM at 72–76.  In ordering remand, the

court found that Commerce erred in denying Canadian Solar's request for an EVA for these sales

and instructed Commerce to either (1) grant the EVA to Canadian Solar because sufficient record

evidence existed to complete the calculation, or (2) clarify its methodology and evidentiary

requirements for granting an EVA and give Canadian Solar the opportunity submit additional

evidence in accordance with these requirements.  See Canadian Solar, 46 CIT at __, 537 F. Supp.

3d at 1398–99.  Commerce granted the EVA to Canadian Solar and recalculated Canadian

Solar's subsidy calculations accordingly, noting that it intends to re-evaluate its EVA

methodology and the circumstances under which an EVA may be granted in future segments of

the proceeding.  Remand Results at 26–27.  Plaintiffs do not object to Commerce's EVA

redetermination.  See Canadian Solar Br. at 1–2; Shanghai BYD Br. at 5.  Commerce's

redetermination regarding the EVA complies with Canadian Solar and is sustained.

Consol. Court No. 19-00178                                                        Page 14

### V.    Export Buyers Credit Program

In its original determination, Commerce applied AFA to find that respondents benefitted from the EBCP.  I&D Memo at 38–39.   Commerce maintained, as it has in prior reviews, that the application of AFA was warranted because respondents' evidence of non-use was unverifiable given the GOC's failure to provide certain information regarding the operation of the EBCP.  Id.; see, e.g. Changzhou Trina III, 44 CIT at __, 466 F. Supp. 3d at 1291; Canadian Solar II, 2020 WL 6129754 at *2.  In ordering remand, the court found that Commerce's claims that respondents' statements of non-use were unverifiable were not supported by substantial evidence and remanded for Commerce to attempt verification of respondents' evidence of non-use or accept that evidence.  See Canadian Solar, 46 CIT at __, 537 F. Supp. 3d at 1402–03.

On remand, Commerce maintains that attempting to verify respondents' evidence of non-use "would be unlikely to yield accurate or meaningful results" without a more complete understanding of the operation of the EBCP.  Remand Results at 6.  Under protest, however, Commerce found that respondents had not used the EBCP and revised the total subsidy rates applicable to the respondents accordingly.  Id.  Canadian Solar maintains that Commerce's determination that it could not conduct verification of the EBCP was unreasonable, but it agrees with Commerce's ultimate determination.  Canadian Solar Br. at 2.  As Commerce's determination on remand complies with the court's order and no other party objects to the finding of non-use of the EBCP, the court sustains Commerce's remand redetermination regarding the EBCP.  Jinko Br. at 2–3; Shanghai BYD Br. at 2–3.

Consol. Court No. 19-00178                                                        Page 15

## CONCLUSION

For the foregoing reasons, Commerce's Remand Results are sustained.  Judgment will enter

accordingly.

/s/      Jane A. Restani
Jane A. Restani. Judge

Dated: May 19, 2022
       New York, New York